IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KAREN FULLER,
         Plaintiff,

v.                           Case No. 17-2335-JWL

MEREDITH CORPORATION,
         Defendant.

## MEMORANDUM AND ORDER

Plaintiff asserts two claims in connection with defendant's decision to terminate her employment as a television news anchor: a claim for gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and a claim for age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* This matter comes before the Court on defendant's motion for summary judgment on both claims (Doc. # 63). For the reasons set forth below, the Court **denies** the motion.

**I.**     **Background**

Defendant Meredith Corporation owns and operates KCTV, a television station in the Kansas City area. Beginning in 2003, defendant employed plaintiff Karen Fuller as a news anchor at the station. In January 2015, the station's general manager, Darrin

McDonald, in consultation with news director Ed Kosowski, decided not to renew plaintiff's contract when it expired in April of that year. Before plaintiff was informed of that decision, however, Mr. McDonald was replaced as general manager by Mike Cukyne. Mr. Cukyne conferred with Mr. Kosowski, and he also decided that plaintiff's employment would be terminated. Plaintiff was 47 years old at that time. Plaintiff subsequently brought the instant suit.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the

movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. ADEA Claim

Plaintiff asserts a claim under the ADEA, which makes it unlawful for an employer to discriminate "because of" a person's age. *See* 29 U.S.C. § 623(a)(1). In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Supreme Court held that the ADEA did not authorize a "mixed-motives" age discrimination claim (alleging discrimination based on both permissible and impermissible factors) in which age was only a motivating factor in the employment decision; rather, to succeed on an ADEA claim, the plaintiff must show that age was the "but-for" cause of the decision. *See id.* at 175-78.

3

As a preliminary matter, defendant argues that it is entitled to summary judgment on plaintiff's age claim under the ADEA because plaintiff conceded in her deposition that her gender also played a role in defendant's decision to terminate her employment. Defendant argues that because the decision was based also on her gender, age cannot have been the but-for cause of the termination. The Court rejects this argument.

The Tenth Circuit has held that, under this standard as enunciated by the Supreme Court, a plaintiff alleging a violation of the ADEA need not show that age was the sole motivating factor in the employment decision; "[i]nstead, an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference." *See Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1277 (10th Cir. 2010) (internal quotation and citations omitted). Although defendant argues that the Court should not permit an "age-plus-gender" claim under the ADEA, defendant has not cited any authority from the Tenth Circuit prohibiting a claim under the ADEA in which an additional motivating factor was an impermissible factor such as gender. Defendant notes that in *Gross* the Supreme Court held that the ADEA did not allow for so-called mixed-motive claims. The Supreme Court, however, meant only that it was not sufficient to show that age was a mere motivating factor, and that but-for causation was required. *See Gross*, 557 U.S. at 175-78. Whether or not gender was also a

motivating factor, to succeed on this claim plaintiff will be required at trial to show that age was the determining factor.¹

In the deposition testimony on which defendant relies, plaintiff merely conceded that age was not the sole factor in defendant's decision to terminate her employment. She did not concede that age was not the but-for cause of that decision. Accordingly, that testimony does not provide a basis for judgment as a matter of law on plaintiff's ADEA claim.

## IV. <u>Gender and Age Claims</u>

Plaintiff does not argue that she has direct evidence of gender or age discrimination with respect to her termination. Accordingly, as both parties agree, the Court must analyze her claims under Title VII and the ADEA at the summary judgment stage under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012) (applying framework to gender and age claims). In this case, defendant does not argue that plaintiff cannot establish a prima facie case of discrimination (the first step in the framework), and plaintiff does not dispute that defendant has asserted a legitimate nondiscriminatory reason

---

¹ In *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010), the plaintiff asserted separate gender and age claims, and the court held that because the plaintiff had produced sufficient evidence of age discrimination to withstand summary judgment on that claim, there was no need to create an independent age-plus-gender claim, as her age claim could simply be judged under the *Gross* standard of but-for causation. *See id.* at 109-10. Similarly here, plaintiff has asserted a claim under the ADEA, and it may be considered under the but-for standard, whether or not there were any motivating factors other than age, including plaintiff's gender.

5

for its decision to terminate her employment (the second step). Thus, the Court proceeds to the final step of the framework, in which plaintiff must introduce evidence that the stated nondiscriminatory reason is merely a pretext for discriminatory intent. *See id.*

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *See Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1150 (10th Cir. 2011) (internal quotations and citation omitted). A plaintiff may also show pretext with evidence that the defendant has "shifted rationales" or that it has treated similarly situated employees differently. *See Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's stated reasons, such that a reasonable jury could find them unconvincing." *See Debord v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013). In determining whether the proffered reason is pretextual, the Court examines "the facts as they appear *to the person making the decision*, not as they appear to the plaintiff." *See id.* (emphasis in original). The Court does not "ask whether the employer's proffered reasons were wise, fair or correct" but only whether "the employer honestly believed those reasons and acted in good faith upon those beliefs." *See id*.

Plaintiff has pointed to a number of facts (while submitting evidence to support those facts) that she argues undermine defendant's stated reasons for her termination.

6

Defendant disputes those facts, and it argues in a number instances that a particular fact is not sufficient in itself to establish the necessary pretext. The Court concludes, however, that when the evidence is viewed in the light most favorable to plaintiff, the totality of that evidence creates a reasonable inference that defendant's stated reasons are pretextual.

As set forth in its answer to interrogatories, defendant's stated reasons for terminating plaintiff's employment are as follows:

> Karen Fuller's contract was not renewed due to Defendant's assessment that her performance was unsatisfactory, both on- and off-air.
>
> As to Ms. Fuller's on-air performance, she was perceived by Defendant as merely going through the motions, *i.e.*, a "prompter reader," without any connection to the news reports she was delivering.
>
> As to Ms. Fuller's off-air performance, it was anticipated that Ms. Fuller, as a prime-time anchor, would be a newsroom leader. Instead, she was very insular, spending much of her time at her desk watching TV by herself. She also showed little interest in mentoring less-experienced newsroom staff.
>
> This failure to participate in the activities in the newsroom was most evident in Ms. Fuller's consistent absence from the daily editorial meetings. As a result, her on-air performance suffered because she did not have the benefit of the extended discussion of news events which occurred during the meeting, resulting in her inability to relate to the news reports she was delivering. This fact was particularly obvious when Ms. Fuller was required to ad lib, because she was ill-prepared.

Plaintiff argues that defendant's reliance on wholly subjective criteria in evaluating her performance provides evidence of pretext. As the Tenth Circuit has noted, "[c]ourts view with skepticism subjective evaluation methods," the use of which may support an inference of pretext. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002). The use of subjective criteria by itself is not considered evidence of pretext, but "the

7

existence of other circumstantial evidence may provoke a stronger inference of discrimination in the context of subjective evaluations standards." *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007).

Defendant asserts that plaintiff's employment was terminated because of poor on-air and off-air performance, and defendant concedes that the quality of an anchor's performance is a matter of subjective opinion. Indeed, as defendant's interrogatory answer reflects, defendant has cited such subjective criteria as the level of plaintiff's connection to the news that she delivered, whether she was a newsroom leader, the degree to which she was insular, and her interest in serving as a mentor. Defendant did not rely on any numerical or other objective evaluation of plaintiff's performance. Accordingly, because defendant relied entirely on subjective criteria that are more susceptible to manipulation and less able to be disputed objectively, plaintiff's other evidence of pretext becomes even stronger.[2]

Plaintiff also notes that Mr. Cukyne decided to terminate plaintiff with very little input from those most familiar with plaintiff's performance. Mr. Cukyne started at the station in January 2015, just before he made the decision to terminate plaintiff, and he conceded that he had no personal knowledge of plaintiff's performance. He testified that he relied on Mr. Kosowski, the news director, but Mr. Kosowski had arrived only the

---

[2] Defendant argues that it did not rely solely on subjective criteria because plaintiff ranked poorly among the local stations' anchors in a 2013 research report. In neither the interrogatory answer nor in the declarations of station managers McDonald and Cukyne, however, were the 2013 rankings cited among the reasons for the decision to terminate plaintiff's employment.

8

previous month. Mr. Cukyne did not get any input from Mr. McDonald or from the previous news director about plaintiff. Defendant argues that Mr. McDonald had reached the same decision before Mr. Cukyne arrived. Nevertheless, the decision whether to retain or terminate plaintiff ultimately resided with Mr. Cukyne after his arrival, and the fact that he made that decision with relatively little input from those with personal knowledge of plaintiff's performance makes that decision at least somewhat less credible.

The credibility of that decision is also undermined somewhat by the scarcity of supporting evidence that plaintiff's performance was in fact poor. For instance, although a couple of co-workers stated that they reported issues about plaintiff's performance to the news director, defendant has not been able to produce any contemporaneous documentary evidence or any video evidence of poor performance by plaintiff, including any previous negative evaluations of plaintiff or written complaints about her. Nor is there is evidence that plaintiff was ever told that her performance was lacking or warned that her performance could result in her termination, even though defendant's president admitted that management would usually tell an anchor of any performance issues.[3] Defendant again points to the 2013 research; but plaintiff has provided evidence, including from the report itself, that her and the station's negative ratings may have resulted from lingering

---

[3] Defendant argues that it was not required to warn plaintiff before terminating her. The point is not that defendant failed to impose some lesser sanction before resorting to termination; rather, the fact that plaintiff was never told during her long tenure that her performance was poor---even though an anchor would ordinarily be told of such an issue----provides evidence that her performance was not in fact poor, and thus provides evidence of pretext.

9

negative audience feelings from a previous station manager's aggressive, tabloid-like style for the station's news, and such evidence must be viewed in plaintiff's favor at this stage.

In addition, plaintiff has provided evidence that her performance was in fact good. First, plaintiff points to the fact that defendant kept her as anchor for 11 years, renewing her contract multiple times. Defendant argues that different decision-makers may apply different standards that justify different treatment of employees. *See Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1175-76 & n.5 (10th Cir. 2006) (pretext not inferred from different treatment of plaintiff by new supervisors). As noted above, however, Mr. Cukyne had no personal knowledge to support his decision, and it is significant that Mr. McDonald did not decide to terminate plaintiff until more than two years after he arrived in December 2012 (and nearly two years after receiving the 2013 report). Defendant cites reasons for why Mr. McDonald did not act sooner, but at this summary judgment stage, the Court must infer that Mr. McDonald's continuation of plaintiff's performance for two years reveals that he did not in fact have a serious issue with plaintiff's performance.

Moreover, plaintiff's previous performance appraisals were positive. Defendant argues that the evaluations were made by a previous news director who was not involved in the decision to terminate her. Those evaluations, however, refer specifically to issues later cited by defendant, such as the extent to which plaintiff was a team player and a newsroom leader. Accordingly, the appraisals provide evidence that defendant's citation to those issues in terminating plaintiff was pretextual.

Plaintiff has also provided evidence from former co-workers who worked closely with plaintiff at the station, who stated that plaintiff's performance was good and that they never heard anyone complain about that performance. Defendant argues that such opinions by non-decision-makers are irrelevant. Defendant cites *Young v. Cobe Laboratories, Inc.*, 1998 WL 184449 (10th Cir. Apr. 17, 1998) (unpub. op.), in which the court stated that conclusory statements by co-workers about the plaintiff's performance was not sufficient to support a finding of pretext. *See id.* at *4. The court in *Young* cited *Fallis v. Kerr-McGee Corp.*, 944 F.2dd 743 (10th Cir. 1991), in which the court stated that a general disagreement with a negative job performance evaluation, without additional evidence, does not establish pretext. *See id.* at 747. In this case, however, plaintiff has not merely offered opposing general opinions about her job performance. Rather, plaintiff's co-workers (including two who worked with plaintiff under Mr. McDonald and one former news director) have addressed and disputed some of the specific issues on which defendant purported to rely, such as plaintiff's daily preparation; whether she was insular; her ability to have reporters "toss" to her after stories; her ability to ad lib; the extent to which she was a team player; and her absence from meetings. These particularized disputes regarding specific qualities distinguish the evidence in this case from the conclusory evidence in *Fallis* and *Young*. All of this evidence of good performance by plaintiff and the lack of

complaints about plaintiff's performance, viewed in plaintiff's favor, supports an inference of pretext.[4]

Plaintiff also argues, in support of her pretext argument, that defendant allowed plaintiff to anchor during the important February sweeps period even after the station managers had decided to terminate her, and that her telecasts achieved good ratings during that period. Defendant argues that plaintiff simply worked that month as expected because her contract did not actually expire until April. Defendant certainly could have chosen to replace plaintiff as anchor during the sweeps period, however, while allowing her to complete her contract period in another capacity. Viewing the evidence in plaintiff's favor, the fact that plaintiff was allowed to anchor during one of the most important viewing periods of the year provides evidence that defendant did not actually consider her a poor on-air performer. Defendant also insists and provides evidence that ratings are not driven by the performance of an anchor; but ratings must depend at least in part on the anchor, as Mr. Cukyne effectively admitted in testifying that the February 2015 ratings did not suggest that one anchor had a poor on-air performance. Defendant also notes that these good ratings came after the decision to terminate plaintiff and thus were not known to those decision-makers; but a good performance shortly after the decision provides evidence to

---

[4] Plaintiff also argues that her performance was commended by Mr. Kosowski in January 2015, around the time the station managers decided to terminate her. In the cited emails, however, Mr. Kosowski addressed the newsroom generally, with no specific mention of plaintiff, and those emails thus do not provide any evidence about plaintiff's performance or Mr. Kosowsi's opinion thereof.

12

contradict the claim that plaintiff was a poor performer at that time, and it thus provides evidence of pretext.[5]

Plaintiff also attacks defendant's reliance on her absence from daily editorial meetings. Plaintiff has provided evidence that in late December 2014 she sent an email to Mr. Kosowski, the news director, explaining that she had not been in editorial meetings lately because she was doing additional work for the 4 p.m. telecast; and that Mr. Kosowski responded the next day as follows: "No problem, I understand you're doing more shows than usual." The Court agrees that this evidence (which defendant did not address in its reply brief) contradicts defendant's assertion that it terminated plaintiff shortly thereafter in part because of her absences from those meetings. Defendant notes that plaintiff told the EEOC that she stopped going to meetings because it was not productive for her to attend. Viewed in plaintiff's favor, however, the evidence shows that she was also absent because of other duties. Moreover, regardless of the reason for her absence, Mr. Kosowski seemingly sanctioned her absences, which undermines defendant's claim that plaintiff's off-air performance failure was most evident in her absence from meetings. Mr. Kosowski did not respond to plaintiff that her attendance was important or that her absence would affect her on-air performance, as defendant now claims. Defendant also notes that it did not terminate plaintiff solely because of those absences. It did cite that reason as a factor,

---

[5] The Court rejects plaintiff's argument that defendant's shifting rationale---relying on ratings previously but now arguing that ratings are irrelevant---shows pretext. Plaintiff cites a letter from defendant's counsel, but plaintiff did not properly submit that exhibit in accordance with the applicable summary judgment rules. Moreover, in the letter defendant's counsel did not state that defendant terminated plaintiff because of bad ratings, but instead argued that the ratings did not support an argument made by plaintiff's counsel.

13

however, and evidence that defendant did not in fact worry about such absences serves as evidence of pretext.

Finally, plaintiff provides evidence of two comments that she argues shows defendant's true desire for a younger anchor, which, because defendant cited only performance reasons for the termination, provides evidence of pretext. Plaintiff was replaced as anchor by 32-year-old Ellen McNamara. On February 4, 2015, Mr. Kosowski sent Mr. Cukyne information about Ms. McNamara as a prospective hire as anchor, including a 17-minute video of her work. Within seven minutes, Mr. Cukyne responded "BINGO!!!!" Mr. Kosowski then replied as follows concerning her appearance and qualifications: "Agree. She has a nice Midwestern 'hometown girl' look. Really solid reporter/journalist. Good newsroom citizen from what I [have] heard." Plaintiff argues that the reference to a "'hometown girl' look" refers to a desire for a young anchor. Defendant argues that the comment does not show pretext because it is simply an isolated and ambiguous remark. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (isolated or ambiguous comments, unrelated to the challenged action, are insufficient to show discriminatory animus; plaintiff must demonstrate a nexus between the statement and the challenged action).

Defendant first argues that the "hometown girl" remark does not refer to age at all, but instead refers solely to appearance, which is a relevant factor in hiring news anchors. Mr. Kosowski testified that in using that language he meant that Ms. McNamara "had a wholesome, friendly, relatable appearance." He further testified, however, that he would not say that Barbara Walters had a "hometown girl" appearance "[b]ecause of her age."

14

Thus, Mr. Kosowski (one of the decision-makers, according to defendant) effectively conceded that there was an age-related component to his "hometown girl" reference. Defendant also argues that the comment was not about plaintiff, whom defendant had already decided to terminate. Nevertheless, the comment was about plaintiff's replacement and, by extension, her position, and thus the necessary nexus exists. *See Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) ("A causal nexus can be shown if the allegedly discriminatory comments were directed at the plaintiff, her position, or the defendant's policy which resulted in the adverse action taken against the plaintiff.") (citing *Cone*, 14 F.3d at 531-32).

Plaintiff also cites comments made in February 2015 by Tye Murphy, the station's creative director, to Mr. Kosowski about Ms. McNamara's appearance. Mr. Kosowski sent Mr. Murphy the information on Ms. McNamara, and the two exchanged comments about her appearance. In one such comment, Mr. Murphy stated as follows: "She can be cute and young but also able to dress up and be more serious and respectable. . . . How will she age I wonder?" Defendant does not dispute that this comment refers to the age of the prospective anchor, with a seeming preference for youth. Defendant argues that this comment is irrelevant because Mr. Murphy was not involved in the decision to terminate plaintiff. The necessary nexus is there, however, as Mr. Kosowski (an admitted decision-maker) solicited Mr. Murphy's opinion and engaged in a discussion with him about Ms. McNamara's appearance. Thus there is evidence to support an inference that Mr. Kosowski wanted Mr. Murphy's opinion and therefore would have relied on that opinion, and that Mr. Murphy therefore did participate in the hiring of plaintiff's replacement.

15

Defendant cites *Cuenca v. University of Kansas*, 101 F. App'x 782 (10th Cir. 2004) (unpub. op.), in which the court noted that "[i]n general, statements by a non-decisionmaker . . . cannot be used to establish that a decision was tainted by discriminatory animus." *See id.* at 788. Defendant has omitted the rest of the court's discussion, however, as the court in *Cuenca* continued as follows: "An exception arises when the record contains evidence from which a reasonable inference may be drawn that a decisionmaker adopted or relied upon the allegedly discriminatory statement in reaching its decision." *See id.* (citing *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1097 (6th Cir. 1996)). The exchange between Messrs. Kosowski and Murphy, solicited by the former, concerning the appearance of a prospective replacement for plaintiff provides evidence from which one may reasonably infer that Mr. Kosowski relied on and adopted the statement, and that he too valued youth as a preferable quality for the female anchor position---especially when this remark is considered in conjunction with Mr. Kosowski's own age-related comment to Mr. Cukyne. Accordingly, the Court agrees that these two comments provide some evidence of pretext here.

The Court need not consider whether any piece of evidence discussed above, if considered by itself, would provide the necessary evidence of pretext to withstand summary judgment. The Court concludes that the totality of this evidence, considered in the light most favorable to plaintiff, does create a reasonable inference that defendant's stated reasons for its decision to terminate plaintiff's employment are not genuine, that those reasons are therefore pretextual, and that defendant instead terminated plaintiff for impermissible reasons. Defendant argues repeatedly that plaintiff must show that its

decision-makers did not in fact *believe* that plaintiff's performance was poor, whether or not her performance actually was poor. In providing evidence that calls into question the conclusion that her performance was poor, however, plaintiff has met her burden to show the necessary pretext. To put it simply, if her performance was in fact satisfactory, the fact that defendant said otherwise provides evidence that it actually terminated plaintiff for a different reason. Accordingly, the Court denies defendant's motion for summary judgment on plaintiff's claims of unlawful discrimination.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. # 63) is hereby **denied**.

IT IS SO ORDERED.

Dated this 20th day of August, 2018, in Kansas City, Kansas.

S/John W. Lungstrum
_____
John W. Lungstrum
United States District Judge